UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 14-CR-131-WBV-MBN |
| JAWAN FORTIA | SECTION 'D'(5) |

## ORDER AND REASONS

Before the Court is Defendant Jawan Fortia's Motion for New Trial Based on Newly Discovered Evidence.[1] The Government opposes the Motion,[2] and Mr. Fortia has filed a Reply.[3] After reviewing the briefs submitted by the parties, the applicable law, and after an extensive review of the entire record and trial transcript in this matter, the Motion for New Trial is **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Jawan Fortia, along with co-defendants Lionel Allen, Delwin McLaren, Dedrick Keelen, and Bryan Scott, were charged in a 29-count Superseding Indictment alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count 1), Conspiracy to Distribute Controlled Substances (Count 2), Conspiracy to Possess Firearms in Furtherance of a RICO Conspiracy and in Furtherance of a Drug Conspiracy (Count 3), Assault with a Dangerous Weapon in Aid of Racketeering (Counts 4, 6, 12, 15, 17, 19, 24, and 28), Use and Carrying of a Firearm During and In Relation to a Crime of Violence and Drug Trafficking Crime

---

[1] R. Doc. 889.
[2] R. Doc. 892.
[3] R. Doc. 894.

1

(Counts 5, 7, 13, 14, 16, 18, 20, 25 and 29), Murder in Aid of Racketeering (Counts 8, 10, 21, 22, and 26), and Causing Death Through the Use of a Firearm (Counts 9, 11, 23 and 27).[4]

In that 29-count Superseding Indictment, Mr. Fortia was charged in five counts: (1) Count 1, the RICO conspiracy; (2) Count 2, Conspiracy to Distribute Controlled Substances; (3) Count 3, Conspiracy to Possess Firearms in Furtherance of a RICO Conspiracy and in Furtherance of a Drug Conspiracy; (4) Count 8, Murder in Aid of Racketeering; and (5) Count 9, Causing Death Through the Use of a Firearm.[5]

Mr. Fortia's trial, along with the trial of his co-defendants, Lionel Allen, Dedrick Keelen, Delwin McLaren, and Bryan Scott, took place from June 5, 2017 through June 19, 2017. Mr. Fortia was found guilty as charged on Counts 1, 2, 3, and 8., and was found not guilty on Count 9 of the indictment.

On July 3, 2017, defendants, Mr. Allen, Mr. Fortia, Mr. Keelen, Mr. McLaren and Mr. Scott, filed a Motion For New Trial.[6] The Government filed an Opposition to the Motion for New Trial on August 4, 2017.[7] In an Order and Reasons dated August 16, 2017, this Court denied the Motion for New Trial.[8]

On October 3, 2017, Mr. Fortia was sentenced to a term of life imprisonment as to Counts, 1, 2, and 8, and a term of 240 months as to Count 3, with all terms to

---

[4] R. Doc. 17.
[5] *Id.*
[6] R. Doc. 720.
[7] R. Doc. 727.
[8] R. Doc. 729.

be served concurrently. A term of five years' supervised release following any release from imprisonment was also imposed.[9]

On February 28, 2019, Mr. Fortia filed the instant Motion, seeking a new trial based on newly discovered evidence.[10] Mr. Fortia asserts that on June 20, 2018, the Government sent a letter to all of the defendants relative to Irian Dorsey, a trial witness who had testified for the Government, in which the Government advised that:

> [T]he government has recently learned, through an attorney proffer, that Mr. Dorsey may have been involved in another murder and non-fatal shooting that was not elicited during the trial [of Mr. Fortia and his co-defendants.] According to this attorney proffer, Mr. Dorsey, Mr. Allen, Mr. Scott, and a fourth known individual, participated in various degrees, in the murder of Stephen Anderson and the non-fatal shooting of Jovall Edwards, which occurred on February 26, 2013. The government did not turn this information over prior to trial because it was unaware of this information at that time.[11]

Mr. Fortia argues that the new information provided by the Government "cast[s] grave doubt not only on the veracity of his [Irian Dorsey's] testimony, but also on Mr. Fortia's guilt in the Smith murder."[12] Mr. Fortia argues that, "this is a rare situation in which new evidence not only calls into questions the credibility of a key witness's lengthy testimony and accusations, but also calls into question a defendant's guilt of the alleged crime."[13]

---

[9] R. Doc. 762, 768.
[10] R. Doc. 889.
[11] Mr. Fortia directs the Court to "*See* Ex. E (Government Disclosure Letter." (R. Doc. 889-1 at p. 3). However, there are no exhibits attached to Mr. Fortia's Motion for New Trial. (*See* R. Doc. 889). Nonetheless, the Court has been provided a copy of that letter and attaches that letter to this Order and Reason **under seal** as R. Doc. 905.
[12] R. Doc. 889-1, p. 28.
[13] R. Doc. 889-1, p. 31.

3

Mr. Fortia correctly asserts that, in order to be granted a new trial on the grounds of newly discovered evidence, a defendant bears the burden of showing: (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to the defendant's lack of diligence; (3) the evidence is material, not merely cumulative or impeaching; and (4) the evidence if introduced at a new trial would probably produce an acquittal.[14] Mr. Fortia notes that this test is also known as "the *Berry* Rule."[15] Relying upon Fifth Circuit precedent, Mr. Fortia further argues that, "No doubt this new evidence greatly strengthens the argument that Mr. Dorsey committed the crime he accused Mr. Fortia of committing . . . . It seriously undermines the confidence in the first trial's outcome and calls into question Mr. Fortia's guilt."[16]

The Government opposes the Motion for New Trial, but agrees that the *Berry* Rule is the appropriate test to determine whether a new trial should be granted.[17] The Government also concedes that the first two prongs of the *Berry* Rule have been satisfied, as neither the Government nor the defendants were are of this evidence at the time of trial, and the failure to detect the evidence was not the result of lack of due diligence by the defendants.[18] The Government then asserts that Mr. Fortia fails to maintain his burden in proving the third and fourth prongs of the *Berry* Rule because Mr. Fortia has not proven that the newly discovered evidence is material,

---

[14] R. Doc. 889-1, pp. 32-33 (citing *United States v. Sullivan*, 112 F.3d 180, 183 (5th Cir. 1997)).
[15] R. Doc. 889-1, p. 32.
[16] R. Doc. 889-1, p. 35-36 (citing *United States v. Piazza*, 647 F.3d 559 (5th Cir. 2011)).
[17] R. Doc. 892 at p. 5.
[18] *Id.* at p. 5.

4

and not cumulative or impeaching, nor has he proven that the evidence is likely to produce an acquittal.[19]

Regarding the Government's argument that the newly provided information is cumulative, the Government asserts that, "Assuming that the new evidence is factually true, the government is at a loss to understand how this new information could damage Dorsey's credibility further to the point that a new trial is warranted."[20] The Government explains that, "At trial, Dorsey openly testified on direct examination to his involvement with the Mid-City killers and the Young Melph Mafia ["YMM"], his participation in two past murders, and his firearm convictions."[21] Thus, the Government argues that the new information "does not undermine Dorsey's testimony about the nature of his relationship to the YMM—it actually strengthens it."[22] The Government spends much of its opposition detailing the extensive cross-examination of Mr. Dorsey by defense counsel, even mentioning how defense counsel "assailed" Mr. Dorsey's testimony and credibility during closing arguments.[23]

The Government further argues that, "[T]he alleged new evidence is only additional evidence that Dorsey was extensively involved in criminal activity. . . . [T]he defense was aware of Dorsey's criminal past and 'exhaustively attacked [his] credibility during cross-examination and on summation."[24] The Government distinguishes the facts of this case from those in *United States v. Piazza*, relied upon

---

[19] *Id.* at p. 6.
[20] *Id.* at p. 7.
[21] *Id.*
[22] *Id.*
[23] *Id.* at pp. 8-10.
[24] *Id.* at p. 14 (citations omitted).

5

by Mr. Fortia, asserting that in *Piazza*, "[T]he newly discovered evidence was direct evidence that showed the defendant's brother may have committed the crime for which the defendant was charged. Here, we have nothing of the sort."[25] The Government argues that, "If a pattern of committing crimes exists for Dorsey, then the pattern was already on full display for the jury."[26] The Government asserts that Mr. Dorsey's alleged "pattern of lying" is "classic impeachment material and improper for consideration by the Court on a motion for new trial."[27] The Government then argues that, "the alleged newly discovered evidence is cumulative impeachment and does not tend to exculpate Fortia in any way from the Vinnie Smith murder."[28] As such, the Government claims the third prong of the *Berry* Rule is not met in this case.

The Government also strongly denies that the introduction of the newly discovered evidence would have resulted in an acquittal for Mr. Fortia. The Government directs the Court to its Opposition to the first Motion for New Trial, wherein the Government asserted that, "Dorsey's testimony did not exist in a vacuum—that his testimony, along with all of the witnesses who cooperated with the government, cross corroborated key facts as they related to the specific crimes committed by the entire YMM defendants."[29] Accordingly, the Government argues that Mr. Fortia cannot satisfy the fourth prong of the *Berry* Rule.

---

[25] *Id.* at p. 16.
[26] *Id.* at p. 16.
[27] *Id.* at p. 17.
[28] *Id.*
[29] *Id.* at p. 19 (*citing* R. Doc. 720).

In response, Mr. Fortia argues that the Government misunderstands the meaning of "material evidence."[30] Mr. Fortia asserts that, "Contrary to the Government's suggestion, the *Berry* test does not require that newly discovered evidence 'exonerate' Mr. Fortia for it to qualify as material or for it ultimately to warrant a new trial."[31] Mr. Fortia argues that, "[N]ewly discovered evidence 'certainly' is material if 'it goes to whether another person committed the acts of which the jury found [the defendant] guilty."[32] Mr. Fortia further argues that the Government's argument is structurally flawed, asserting that, "The Government appears to believe that evidence can only be *either* impeaching *or* material. . . . But, of course, the two are not mutually exclusive. Indeed, the *Berry* test requires that new evidence be 'material, *not merely* cumulative or impeaching.'"[33] Mr. Fortia concludes that, "[T]he newly disclosed information is material, because it 'greatly strengthens [Mr. Fortia's] argument that 'another person committed the acts of which the jury found [him] guilty,'" which would leave the jury with reasonable doubt.[34]

## II. LAW AND ANALYSIS

When a defendant files a motion for new trial based on newly discovered evidence, the United States Fifth Circuit Court of Appeals applies a four-part test known as the "*Berry* Rule."[35] The four factors to be considered are: "(1) the evidence was newly discovered and unknown to the defendant at the time of the trial; (2)

---

[30] R. Doc. 894.
[31] *Id.* at p. 7.
[32] *Id.* (citing *United States. v. Piazza*, 647 F.3d 559, 569 (5th Cir. 2011)).
[33] R. Doc. 894, p. 8 (quoting *United States v. Sullivan*, 112 F.3d 180, 183 (5th Cir. 1997) (emphasis added by Mr. Fortia)).
[34] R. Doc. 894, p. 10 (quoting *Piazza*, 647 F.3d at 569).
[35] *Sullivan*, 112 F.3d at 183.

failure to detect the evidence was not the result of lack of due diligence by the defendants; (3) the evidence is material, not merely cumulative or impeaching; and (4) the evidence will probably produce an acquittal."[36] The motion must be denied if the defendant fails to demonstrate any one factor.[37]

Here, the Government concedes that Mr. Fortia has satisfied the first two prongs of the *Berry* Rule, namely, that the evidence was newly discovered and unknown to the defendant at the time of the trial, and that the failure to detect the evidence was not the result of lack of due diligence by the defendants. Accordingly, the Court will focus on whether Mr. Fortia has met his burden of proving the third and fourth prongs of the *Berry* test.

### A. The Third Prong of the *Berry* Rule: The Evidence is Material, Not Merely Cumulative or Impeaching.

The question before the Court is whether the information provided in the Government's June 20, 2018 letter is material. In the letter, the Government informed defense counsel that one of the Government's witnesses at trial, Irian Dorsey, "may have been involved in another murder and non-fatal shooting that was not elicited during the trial." It is not clear from the Government's letter whether this information regarding Mr. Dorsey has been proven, is alleged but not proven, or whether it is under investigation. However, the Court finds that it is clear from the

---

[36] *Id.* (citing *United States v. Ardoin*, 19 F.3d 177, 181 (5th Cir. 1994), *cert. denied,* 513 U.S. 933 (1994)).
[37] *Piazza,* 647 F.3d at 565.

letter that neither the Government nor the defendants were aware that Mr. Dorsey may have been involved in another murder and shooting when he testified.[38]

The United States Supreme Court has held that, "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."[39] The Supreme Court further held that, "It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record."[40] Such is the case here. A review of the entire record is essential to determine whether the newly disclosed information creates reasonable doubt that did not otherwise exist.

On its face, the newly discovered evidence points to information that Mr. Dorsey, a trial witness, may have been involved in another murder and a shooting, which purportedly occurred prior to the trial in this matter. The record confirms that Mr. Dorsey was a witness for the Government in this case, and that Mr. Dorsey provided testimony regarding Mr. Fortia. Specifically, the record reveals that Mr. Dorsey testified as to Mr. Fortia's involvement with the Young Melph Mafia, and testified that he had seen Mr. Fortia with guns.[41] Mr. Dorsey further testified that

---

[38] A separate question exists as to whether Mr. Fortia, *even if this information had been known*, would have been allowed to question the witness regarding it. The Court notes that the information provided by the Government indicates that the witness "may have been" involved in another murder and shooting. It would have been up to the trial court to rule on whether the witness could have been questioned about something that did not result in either an arrest or conviction. This Court does not offer an opinion on that question.
[39] *United States v. Agurs*, 427 U.S. 97, 109-10, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976).
[40] *Id.*, 427 U.S. at 112, 96 S.Ct. at 2402.
[41] Trial Transcript from June 6, 2017, pp. 79-80, 97-98.

9

one of Mr. Fortia's co-defendants, Mr. Keelen, told Mr. Dorsey that he (Mr. Keelen) could not use a certain gun because it was "hot," as Mr. Fortia had used it to kill someone.[42] Mr. Dorsey further testified that Mr. Fortia was in the vehicle with him and several of Mr. Fortia's co-defendants when Travis Thomas was shot and killed, and testified that he knew Mr. Fortia had killed Vennie Smith.[43] Mr. Dorsey also testified on direct examination regarding his numerous criminal convictions, both in state court and in federal court, and his plea agreements with the Government.[44] As the following colloquy shows, Mr. Dorsey was questioned by defense counsel regarding his veracity:

> Q: And it's important to always tell the government the truth when you meet with them; isn't that correct?
> A: Yes.
> Q: But you haven't always one that, have you?
> A: No.[45]

During closing arguments, Mr. Fortia's counsel and counsel for his co-defendants passionately argued on behalf of their clients, calling the Government's witnesses "a bunch of liars," and further asserting that, "They [the Government] brought in here murderers. They brought in here liars."[46] Defense counsel specifically argued that four of the Government's witnesses, Mark Rayfield, Irian Dorsey, Passion Cobbins, and Jacobi Boyd, were "a bunch of liars."[47] Counsel for Mr. Keelen, one of Mr. Fortia's co-defendants, argued that, "Irian Dorsey doesn't care

---

[42] Trial Transcript from June 6, 2017, p. 101.
[43] *Id*. at pp. 109-117.
[44] Trial Transcript from June 6, 2017.
[45] Trial Transcript from June 6, 2016, p. 161.
[46] Trial Transcript from June 14, 2017, p. 36, 57.
[47] *Id*. at p. 36.

10

about Dedrick Keelen, and he will throw him under the bus to work down the life-plus-ten years he's facing on his own murders."[48] Counsel for Mr. Allen, another co-defendant of Mr. Fortia, similarly argued that, "We also heard from Mr. Dorsey who I've already gone over. He's a killer, he's serving life, and he's trying to get out."[49]

These quotes from the closing arguments are illustrative of the arguments made by defense counsel to the jury regarding Mr. Dorsey's credibility. They are noted for two reasons: first, the triers of fact, the members of the jury, were in the best position to judge credibility. They heard all of the witnesses' testimony, and they heard the arguments of counsel questioning and assailing the credibility of this witness (and others). It remained their role to determine which witnesses to believe and which not to believe. Secondly, this does not appear to be a case where a witness with an untarnished reputation testified, only to find later that the witness had credibility issues. It was clear during the trial, as eloquently and passionately brought out in the closing arguments, that Mr. Dorsey's credibility was already in question at the time he testified, largely because of his past involvement in violent crimes. In fact, Mr. Fortia agrees that the new information is impeachment evidence, asserting that, "No one disputes that Mr. Dorsey was a deeply problematic witness. Nor does anyone dispute that this new evidence further impeaches his credibility. Of course it does. . . . It's true that this evidence is impeaching—it's also material."[50]

---

[48] *Id.* at p. 52.
[49] *Id.* at p. 66.
[50] R. Doc. 894, pp. 8-9.

11

In addressing whether, and to the extent, the information is material, the transcript reflects that Mr. Dorsey was not the only witness to provide evidence against Mr. Fortia. A review of the trial transcript reveals that Deontre Hills testified that he knew Mr. Fortia to carry a firearm.[51] Another witness, Derrick Carter, verified recordings of phone calls between himself and Mr. Allen, one of Mr. Fortia's co-defendants, during which Mr. Allen said he gave a gun to Mr. Fortia.[52] Mark Rayfield likewise testified that he saw Mr. Fortia with a gun once.[53] Mr. Rayfield further testified that he heard Mr. Fortia talking about Bop [Jevarion Jones] being shot.[54] Mr. Rayfield testified that Mr. Allen, Mr. Keelen and Mr. Fortia told him that they were responsible for the murder of Vennie Smith.[55] Specifically, Rayfield testified "I just heard them say, 'You all saw the police going down there? That was our work,' or whatever."[56] Mr. Rayfield further testified, "So I only heard Tittie [Fortia] just say, 'I think I shot him in his chest.' That was it."[57]

Jacobi Boyd similarly testified that Mr. Fortia, whom he had known for years, was a member of the Young Melph Mafia, and that he had seen Mr. Fortia sell marijuana and carry firearms from 2009 "until the end [Mr. Fortia's arrest]."[58] Mr. Boyd further testified that Mr. Fortia shot and killed Ronnie Davis. Specifically, he testified:

> Q. Can you tell the jury what happened.

---

[51] Trial Transcript from June 7, 2017, p. 34.
[52] Trial Transcript from June 8, 2017, pp. 44-45.
[53] Trial Transcript from June 8, 2017, p. 221-222.
[54] *Id.* at pp. 228-229; *See Id.* at p. 19.
[55] *Id.* at pp. 231-232.
[56] *Id.* at p. 232.
[57] *Id.*
[58] Trial Transcript from June 12, 2017, pp. 267, 280-281.

12

> A. He [Ronnie Davis] pulled outa gun on Shawn. And he came told me, and we went to kill him, but Passion [Cobbins] jumped in front of the gun so everybody ran so we left.
> Q. So who pulled a gun?
> A. Myself.
> Q. Any Mr. Davis was there?
> A. Yes, sir.
> Q. But—and who broke it up?
> A. Passion [Cobbins].
> Q. Then what happened?
> A. Everybody just ran so we left.
> Q. All right. And did something happen with Mr. Davis later?
> A. The next day he got shot.
> Q. Do you know by whom?
> A. Jawan.
> Q. Jawan Fortia?
> A. Yes, sir.
> Q. Now, how do you know that, sir?
> A. He told me.
> Q. When did he tell you?
> A. The next day.
> Q. Where did he tell you, do you remember?
> A. In the projects.
> Q. Was anybody else present when he told you that?
> A. It was a couple of us.
> Q. Do you remember who?
> A. Jawan, Brianna, Alfred, Shaw. It was a couple of us.
> Q. Do you know what gun he used?
> A. He used a .380 9mm.
> Q. Why did he shot Mr. Davis?
> A. Because he was a 110er.[59]

Mr. Boyd further testified that he was with the defendant on June 14, 2012, when "We was out looking for 110ers—for the 110ers, and we just went into the neighborhoods that we knew they was known to hang at. But it started raining so

---

[59] Trial Transcript from June 13, 2017, pp. 8-10.

when we was coming back to go back in the project, we noticed 'Bop' and we jumped out of the car and started shooting at him."[60]

Passion Cobbins, the self-described "first lady" of the Young Melph Mafia, testified that the group, including Mr. Fortia, whom she identified in Court, was a group of young boys that sold drugs and killed people.[61] Ms. Cobbins testified that she saw Mr. Fortia with guns and selling crack cocaine.[62] She further testified to the following:

> Q. Who came by?
> A. Lionel Allen, Jawan Fortia, and 'Ivory' Dorsey.
> Q. Did they say anything to you?
> A. No.
> Q. Did you hear them make any statements?
> Q. Yeah. They just came back—Jawan said that they just came back from spinning [shooting].
> Mr. Paige: For point of reference, Overt Act 14.
> Q. Did you later learn why Vennie Smith was killed?
> A. Yes. Because Jawan Fortia thougth that Vennie was crossing him with the 10th Ward, but Vennie didn't even know nobody out of the 10th Ward. He wasn't even familiar with the boys out of the 10th Ward.
> Q. Who told you that?
> A. Who told me that Vennie was crossing them? Jawan Fortia told me face to face hisself [sic] that he thought Vennie was crossing him with the 10th Ward.[63]

Based on the foregoing review of the record, the Court finds that there was testimony from many witnesses, not only Mr. Dorsey, to support Mr. Fortia's conviction.

---

[60] *Id.* at p. 18.
[61] Trial Transcript from June 12, 2017, p. 157.
[62] *Id.* at pp. 164, 165-166.
[63] *Id.* at pp. 173-175.

Further, as noted in the cases cited earlier, the Fifth Circuit does not permit new trials for newly discovered evidence that is merely cumulative or impeaching.[64] Instead, under the third prong of the *Berry* Rule, a defendant bears the burden of showing that the newly discovered evidence is material, and not merely cumulative or impeaching.[65] Having reviewed the testimony elicited at trial, as well as the new information contained in the June 20, 2018 letter provided by the Government, the Court finds that Mr. Fortia has failed to satisfy the third prong of the *Berry* Rule, as Mr. Fortia has not shown that the new evidence is material, rather than merely cumulative or impeaching. Because a motion for new trial must be denied if the defendant fails to demonstrate any one factor of the *Berry* Rule,[66] the Court need not determine whether Mr. Fortia has satisfied the fourth factor of the *Berry* Rule.

### III. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that the Motion for New Trial,[67] filed by defendant, Jawan Fortia, is **DENIED**.

New Orleans, Louisiana this 24th day of January, 2020.

*Wendy B. Vitter*
**WENDY B. VITTER**
**United States District Judge**

---

[64] *United States v. Sullivan*, 112 F.3d 180, 183 (5th Cir. 1997).
[65] *Id.*
[66] *United States v. Piazza*, 647 F.3d 559, 565 (5th Cir. 2011).
[67] R. Doc. 889.

15